**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

ANA L. SANTIAGO,

                          Plaintiff,

              v.                                              DECISION
                                                              and ORDER
MICHAEL J. ASTRUE, Commissioner                               07-CV-6239CJS
of Social Security

                          Defendant.

_____

## INTRODUCTION

Plaintiff Ana L. Santiago ("Santiago"), brings this action pursuant to the Social Security Act, (codified in relevant parts at 42 U.S.C. § 401 et. seq. and 42 U.S.C. § 1381 et. seq.) claiming that the Commissioner of Social Security improperly denied her application for benefits under Title XVI of the Act, 42 U.S.C. § 1385. Specifically, Santiago alleges that the decision of an Administrative Law Judge ("ALJ"), which denied her benefits was erroneous and not supported by the substantial evidence contained in the record, or was contrary to law. She seeks a reversal of that decision and a remand only for calculation of benefits. The Commissioner moves for reversal pursuant to sentence four of 42 U.S.C. § 405(g) and remand for a rehearing, but not calculation of benefits. For the reasons stated below, the Court reverses the Commissioner's decision denying benefits, and remands the case to the Commissioner for a calculation of benefits.[1]

_____

[1]At oral argument, Santiago's counsel informed the Court that the Commissioner recently approved her for receipt of benefits, but only from the date of the ALJ's decision. Thus, this matter now involves a closed period from her application date to the date of the ALJ's decision.

**BACKGROUND**

By application dated January 20, 2004, with a protective filing date of January 5, 2004, Santiago filed for Supplemental Security Income benefits. (Record at 52-55, 15.) Santiago is now 44 years old and evidence in the Record indicates she completed ninth grade in Puerto Rico, but it is not clear whether she was enrolled in any special education classes during her school years.  (Record at 159, 165.) However, she clearly has limited literacy in English and had a translator at the hearing.  (Record at 328.) Although she has no past relevant work experience, she did perform some farm work in Puerto Rico. (Record at 328.) Santiago claimed in her application that she has been disabled since May 16, 2003.  (Record at 52.)

Santiago's application was denied on April 7, 2004,. Subsequently,  on May 17, 2004, she requested an administrative hearing. On August 17, 2006, such hearing  was held by video teleconference before ALJ Melvin D. Benz, of Dover, Delaware. (Record at 46-49, 50-51, 323-52.)  At the hearing, Santiago was represented by Doris M. Cortes, a paralegal employed by the Empire Justice Center in Rochester, New York. (Record at 33.)

In a decision dated October 12, 2006, ALJ Benz, relying on testimony from vocational expert Adina Leviton, found that Santiago had the residual functional capacity to perform work that exists in significant numbers in the national economy and that she was, therefore, not disabled. (Record at 22.) On March 23, 2007, the Appeals council denied her request for review and Santiago filed this action on May 9, 2007. (Record at 5.)

**DISCUSSION**

I.     Jurisdiction and Scope of Review

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v NLRB*, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. *See*, *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

II.    The Commissioner's decision to deny Plaintiff's Application for Benefits is not supported by the substantial evidence in the record.

The Court notes that both sides in this case contend that the Commissioner's decision must be reversed. The Court concurs. As the government points out in its memorandum of law, the ALJ inadequately phrased his question to the vocational expert; therefore, her conclusion is not supported by substantial evidence in the record. Since the ALJ relied upon the vocational expert's conclusion in determining that Santiago could do work available in the national economy, his conclusion is likewise without a basis. Consequently, the question for the Court becomes: should the matter be remanded for a new hearing, as the Commissioner maintains; or should the matter be remanded solely

for the calculation of benefits, as Santiago maintains. In arguing for the latter result, Santiago contends that she should have been found disabled under the listings, 20 C.F.R. Subpart P, Part 404, Appendix 1, § 12.05, Mental Retardation.  In that regard, the ALJ did consider whether Santiago fit within § 12.05, recognizing that medical source, Dr. Christine Ransom, a consultant medical examiner, reported IQ scores falling within the range of §§ 12.05B and 12.05C. (Record at 18.) The ALJ, though, based upon his determination that there was "no evidence of a lack of adaptive functioning manifested before the age of 22," along with Santiago's denial of ever attending any special education classes and her admission to being able to perform "daily activities which are inconsistent with the lack of adaptive functioning," determined that she did not meet those listings. (Record at 18.)

However, the Court disagrees with the ALJ's determination, and finds that substantial evidence in the record supports Santiago's  contention that she meets the mental retardation requirements of §§ 12.05B and 12.05C.  In that regard, Dr. Ransom tested and examined Santiago on March 24, 2004.  Dr. Ransom concluded that on the basis of Santiago's  performance on a WAIS-III test, she had a full scale IQ score of 57, a verbal IQ score of 59 and a performance IQ score of 63 placing her functionality in a mildly mentally retarded range.  Dr. Ransom also considered Santiago's activities of daily living.   As to the WAIS-III, Dr. Ransom determined that the "results are considered to be a valid and reliable estimate of current functioning." (Record at 166.) To support a finding that a claimant is "disabled," Subsections B and C of § 12.05 require:

> B. A valid verbal, performance, or full scale IQ of 59 or less; or
> C. A valid, verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function

§12.05B requires a full-scale IQ of 59 or less and section 12.05C requires a full-scale IQ of 60 to 70.  Further, the Commissioner's regulations define mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22. 20 C.F.R. Part 404, Subpart P., Appendix1, § 12.05.As to the requirement , Santiago points out in her memorandum of Law that the Eighth Circuit determined in *Muncy v. XL,* 247 F. 3d 728, 734 (8th Cir. 2001), that "a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning." In *Muncy,*, the claimant was also 41 at the time of the ALJ hearing and his IQ test scores were obtained in 1988 (full scale 59) and 1994 (full scale 84). The Eighth Circuit remanded the case to the ALJ, finding that:

> The ALJ here cited no evidence demonstrating a dramatic upswing in Muncy's intellectual or adaptive functioning between 1988 and 1994, other than the higher second IQ score. Nor did the ALJ challenge the validity of the first IQ score as inconsistent with other evidence in the record. Muncy remains unable to read, write, manage his finances, or even fill out Social Security applications. He thus still appears to be dependent on his wife for many activities of daily living.

*Muncy*, 247 F.3d at 735. As was the case in *Muncy* who was in his early 30's when his first IQ score was obtained, the first IQ score obtained in this case was well after Santiago turned 22 years of age. Nevertheless, nothing in the record indicates that Dr. Ransom's test results did not validly reflect Santiago's  mental abilities prior to age 22. Moreover, as the Commissioner explained in his August 21, 2000, change to listing 12.05:

> In response to one comment, we expanded the phrase setting out the age limit for the "developmental period." The final rules clarify that we do not necessarily require evidence from the developmental period to establish that

the impairment began before the end of the developmental period. The final rules permit us to use judgment, based on current evidence, to infer when the impairment began. This is not a change in interpretation from the prior rules.

65 Fed. Reg. 50746, 50753 (Aug. 21, 2000.) The Commissioner further expanded on his

explanation of § 12.05 in his response to a public comment:

Comment: One commenter viewed the second paragraph of proposed listing 12.05 as requiring evidence of intelligence testing prior to age 18. The commenter offered several arguments why this would be difficult for adults to establish and why it would be preferable to use more recent information.

Response: We adopted the comment. We did not intend the second paragraph of proposed listing 12.05 to require intelligence testing (or other contemporary evidence) prior to age 18, but we believe that the proposed listing could be misinterpreted, even though it was the same as in the prior rules. The proposed listing, as in the prior rules, stated that the significantly subaverage general intellectual functioning with deficits in adaptive behavior must have been initially "manifested" during the developmental period. We have always interpreted this word to include the common clinical practice of inferring a diagnosis of mental retardation when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period. Nevertheless, we also can see that the rule was ambiguous. Therefore, we expanded the phrase setting out the age limit to read: "*i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."

65 Fed. Reg. at 50772.  Here in accord with the WAIS-III results,  Dr. Ransom determined

that Santiago was capable of reading only at a second grade level. (Record at 167.) The

Record contains no evidence of an illness or trauma that could explain how she could have

tested with a low IQ score in her 40s, but not in her earlier years. On this point, in *Hodges*

*v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001), the Eleventh Circuit addressed this

issue, writing:

Acknowledging the lack of IQ evidence before age twenty-two, Hodges asserts that absent evidence of sudden trauma that can cause retardation, the IQ tests create a rebuttable presumption of a fairly constant IQ throughout her life. We agree. Other appellate courts have recognized this

presumption finding that IQ's remain fairly constant throughout life. *See Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) ("Mental retardation is not normally a condition that improves as an affected person ages. . . .Rather, a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning."); *Luckey v. U.S. Dept. of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989) (holding absence of IQ test in developmental years did not preclude finding of mental retardation predating age twenty-two and courts should assume an IQ remained constant absent evidence indicating change in intellectual functioning).

*Hodges*, 276 F.3d at 1268-69. The Honorable John T. Elfvin, a fellow judge in this district,

considered the question of the age restriction of § 12.05 and determined that:

> As a matter of housekeeping, it must be noted that listing 12.05(B) also requires a finding that plaintiff's mental disability have manifested itself before the age of twenty-two. Absent such a finding, plaintiff cannot be considered disabled under such listing, regardless of her current IQ test score. Nevertheless, inasmuch as mental retardation is considered to be a lifelong condition, "an IQ score is presumed to accurately reflect an individual's IQ throughout that person's entire life, regardless of the individual's age when the IQ test is administered." *Holmes v. Apfel*, No. 98 C 5087, 1999 U.S. Dist. LEXIS 14286, *15, 1999 WL 731769, at *5 (N.D. Ill. Aug. 31, 1999); *see also Vasquez-Ortiz* [*v. Apfel*], [48 F. Supp. 2d 250] at 257 ("absent any evidence of a change in the plaintiff's intellectual functioning, it is appropriate to assume that plaintiff's IQ has not changed since [her] twenty-second birthday"). Consequently and in the absence of contrary evidence, the undersigned must assume that plaintiff's IQ test taken after her twenty-second birthday correctly reflects her IQ prior to that time. *See Holmes*, at *6.

*Figueroa Rivera v. Apfel*, No. 98-CV-619E(F), 2000 U.S. Dist. LEXIS 15396, *9-*10

(W.D.N.Y. Sept. 29, 2000.) The Court finds the discussions in *Hodges* and *Figueroa Rivera*

persuasive. The Commissioner's regulations clearly do not *require* evidence of low IQ

scores prior to age 22, but only that a claimant's mental deficiency must have been initially

"manifested" during the developmental period, that is, prior to age 22. Substantial evidence

in the Record supports that Santiago has "subaverage general intellectual functioning with

deficits in adaptive functioning initially manifested during the developmental period. " 20

C.F.R. Subpart P, Part 404, Appendix 1, § 12.05.

Furthermore, substantial evidence in the Record shows not only that Santiago

meets the requirements of § 12.05B (valid verbal, performance, or full scale IQ of 59 or

less), but also that she meets or exceeds the requirements of listing § 12.05C (valid verbal,

performance, or full scale IQ of 60 through 70 and a physical or other mental impairment

imposing an additional and significant work-related limitation of function).   There is no

dispute that Santiago suffers from post cervical cancer with radiation colitis and

depression.  (Record at 17.) This is sufficient to meet the "significant work-related limitation

of function" of  § 12.05C . *Edmond v. Barnhart*, No. 04-CV-6515CJS, 2006 U.S. Dist.

LEXIS 69169, *25 (W.D.N.Y. Aug. 9, 2006) ("the Court finds that the language in 65 F.R.

50784…shows that the Commissioner considers a 'severe' impairment to be the equivalent

of a 'significant' limitation for the purposes of Listing § 112.05D.").[2].

## CONCLUSION

Since the Court has already determined that substantial evidence in the Record

demonstrates that Santiago meets the listing in §§ 12.05B and 12.05C, remand for a

rehearing would serve no additional purpose. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.

1980). Therefore, the Court grants Santiago's cross-motion for judgment on the pleadings

(Docket No. 9) and denies the Commissioner's motion (Docket No. 8) for remand for a new

---

[2]"The structure of the mental disorders listings for children under age 18 parallels the structure for the mental disorders listings for adults [in § 12.00]." 20 C.F.R. Subpart P, Part 404, Appendix 1, § 112.00. Listing § 112.05D requires a showing of, "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function…."

hearing. The Clerk is directed to enter judgment for the plaintiff.


       IT IS SO ORDERED.

DATED: June 10, 2008
          Rochester, New York

                     ENTER:


                     /s/ Charles J. Siragusa_____
                     CHARLES J. SIRAGUSA
                     United States District Judge